Eveline GOINS

v.

JBC & ASSOCIATES, P.C., Jack H.
Boyajian, Marvin Brandon.

No. 3:03CV636JBA.

United States District Court,
D. Connecticut.

Jan. 14, 2005.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Plaintiff.

Jonathan D. Elliot, Sabato Pellegrino Fiano, Kleban & Samor, PC, Southport, CT, for Defendants.

## Ruling on Plaintiff's Motion for Partial Summary Judgment

ARTERTON, District Judge.

Plaintiff moves for partial summary judgment on liability for violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692e and § 1692f. For the reasons discussed below, plaintiff's motion is granted in part.

## I. Background[1]

Plaintiff Eveline Goins ("Goins") is a consumer within the meaning of the FDCPA, who allegedly owes a debt that is the subject of collection efforts. *See* 15 U.S.C. § 1692a(3). Defendant JBC & Associates, P.C. ("JBC") is a law firm located in New Jersey, owned by defendant Jack H. Boyajian, an attorney licensed to practice in California, and employing defendant Marvan Brandon, an attorney licensed to practice in New Jersey. Boyajian describes his occupation as "an attorney at law that provides services to clients who have debts that are with consumers that I am engaged in recovering for." Deposition of Jack H. Boyjian, Jan. 27, 2004 [Doc. # 38] at 25:7–9. Although defendants are not licensed as a consumer collection agency in Connecticut, they have sent letters to Connecticut residents, identifying themselves as attorneys at law, seeking collection of debts.

In September 1997, JBC received a claim by Wilson Suede & Leather for two returned checks written by plaintiff in the amounts of $243.79 and $158.99. Goins filed suit against defendants under the FDCPA in June 2002 challenging their collection activity related to the debt allegedly owed to Wilson Suede & Leather. *See Goins v. JBC & Associates, P.C., et al.,* Civ. No. 3:02cv1069 (MRK). Goins commenced a second FDCPA action against Brandon in August 2002, which also was related to the collection of the Wilson Suede & Leather debt. *See Goins v. Bran-*

---

1. Defendants move to strike several documents submitted by plaintiff in support of her summary judgment motion, including those that reference other lawsuits, JBC's website, JBC's licensing application, a 1998 letter, and a West Virginia subpoena. Because the Court has not relied on these documents in reaching its decision, defendant's motion to strike [Doc. # 53] is DENIED as moot.

*don,* Civ. No. 3:02cv1537 (AVC). In April 2002, plaintiff filed for bankruptcy, defendants were made aware of the bankruptcy filing, and JBC put a hold on further communications with Goins. *See* Declaration of Jack H. Boyajian [Doc. # 49] at ¶ 5.

Despite the hold on her account, on February 17, 2003, JBC sent Goins another letter demanding payment of the debt allegedly owed to Wilson Suede & Leather. The text of the February 17, 2003 letter that JBC sent to Goins states:

| | |
|---|---|
| Re: | Wilson Suede & Leather |
| File #: | 562183 |
| Driver's License: | 212895428 |
| Balance: | $10277.56 |

Dear Eveline J Goins:

You have obviously chosen to ignore our previous communication demanding that you make restitution on an NSF check(s) written to our above-referenced client(s). Our client(s) may now assume that you delivered the check(s) with intent to defraud, and may proceed with the allowable remedies.

Since you have not tendered payment for the full amount of the check(s) and service charge(s) within the 30 days provided, pursuant to Connecticut General Statutes Section 52–565a, you may be subject to statutory penalties as determined by the court, but in no event shall be greater than the face value of the check or $400.00, whichever is less, for a total amount of $10277.56.

You may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction by a qualified attorney by contacting **Lori Brown** at 800–241–1510. If you qualify, you may also be able to use your American Express, Discover, Mastercard or Visa credit card to meet this obligation.

Very truly yours,

**JBC & Associates, P.C.**

**Attorneys at law**

This is an attempt to collect a debt by a debt collector. Any information will be used for that purpose.

## II. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). In order to defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

When deciding a motion for summary judgment, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States*

*v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, "[w]hen a motion for summary judgment is made and supported as provided in [the Federal Rules], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R.Civ.P. 56(e). Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial. *See id.*

### III. Discussion

Plaintiff argues that the February 17, 2003 collection letter sent by defendants to plaintiff violates the FDCPA because (1) defendants were not licensed to collect as required by Connecticut law; (2) defendants knew plaintiff was represented by counsel; (3) the letter demanded considerably more than any possible amount of the alleged debt; and (4) the letter threatened to sue on a time-barred debt.

In opposing plaintiff's summary judgment motion, defendants make three arguments. First, they argue that this FDCPA suit, the third that Goins has brought against them, violates the rule against splitting causes of action, because they all arise from the same collection effort that JBC undertook. Second, they assert that the February 17, 2003 letter resulted from "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c). Finally, they claim that Brandon and Boyajian were not debt collectors in the transaction at issue in this case.

### A. Duplicative Litigation

▉ It is well-established that "a district court may stay or dismiss a suit that is duplicative of another federal court suit" in the exercise of its discretion, "as part of its general power to administer its docket." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138

(2d Cir.2000). The determination of whether a suit is duplicative is informed by the doctrine of claim preclusion. "[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." *Id.* (quoting *United States v. The Haytian Republic*, 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894)). Thus, a suit is duplicative, and claims would be precluded, where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." *Id.* at 139 (citation omitted); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997) (claim preclusion applies when a second suit "involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first.").

▉ Claim preclusion, however, "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit.... The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." *Curtis*, 226 F.3d at 139 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir.1996)). The instant suit is based on a single letter sent by JBC to plaintiff in February 2003, after the two earlier lawsuits had been commenced. Even if the letter were part of the same debt collection activity that defendants had been engaged in and which was the subject of plaintiff's prior suits, the February 17, 2003 letter constitutes a

separate event which may violate the FDCPA independently of prior communications from defendants. Because the facts underlying this suit arose subsequent to the filing of plaintiffs' previous complaint and are distinct from the facts underlying the previous suit, this action is not duplicative.

Defendants argue that by bringing three separate actions, plaintiff may obtain more damages than if she had brought a single action based on all claimed violations. The FDCPA provides that statutory damages "in the case of any action by an individual" shall not "exceed[ ] $1,000," 15 U.S.C. § 1692k(a)(2)(A), and based on this language at least two circuits have held that the FDCPA limits additional damages beyond the actual damages sustained by a plaintiff to $1,000 per action, not per violation. *See Harper v. Better Business Services, Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992) (holding that additional damages were limited to $1,000 per action because "[t]he FDCPA does not on its face authorize additional statutory damages of $1,000 per violation of the statute, of $1,000 per improper communication, or of $1,000 per alleged debt. If Congress had intended such limitations, it could have used that terminology."); *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir.1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."). There is no prohibition in the FDCPA against separate lawsuits for separate statutory violations

of the FDCPA by the same defendant. Where, as here, the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine, plaintiff may avail herself of the serendipity of an additional FDCPA violation by the same defendant subsequent to initiation of a prior lawsuit and thereby avoid a per action damages limitation, as is undoubtedly plaintiff's strategy here.

**B. Individual Defendants**

■ Defendants also argue that Goins has failed to demonstrate that Brandon and Boyajian acted as debt collectors, because the February 17, 2003 letter at issue here is from "JBC & Associates" and is not signed by either of the individual defendants. In an affidavit submitted in opposition to summary judgment, Brandon states that he "did not draft the letter, nor did I cause it to be printed or mailed," and that he "had no personal involvement in any effort to collect moneys from the plaintiff relating to the letter in question or at or about the time of the letter in question." Affidavit of Marv Brandon [Doc. # 50] at ¶¶ 3–4.[2] In reply, plaintiff notes that the February 17 letter refers to "our previous communication," "[o]ur client(s)," and threatens that "we" may seek appropriate relief in court. The use of the first person plural, plaintiff argues, refers to both individual defendants. Plaintiff also argues that because Brandon signed prior letters to plaintiff and acknowledged acting as a debt collector with

---

**2.** Plaintiff moves to strike paragraph 3 of Brandon's affidavit "to the extent he contradicts earlier sworn statements and is estopped by his judicial admissions that he is a debt collector." Memorandum in Support of Plaintiff's Motion to Strike Declarations [Doc. # 59] at 2. Plaintiff points to defendants' Answer and response to interrogatories in related cases, *Goins v. Brandon*, Civ. No. 3:02cv1537 (AVC) and *Goins v. JBC et al.*, Civ. No. 3:02cv1069 (MRK), in which Brandon is

acknowledged to be a debt collector involved in reviewing or drafting the form of letters sent in conjunction with the collection of plaintiff's debt. Because these admissions do not necessarily apply to Brandon's conduct with respect to the February 17, 2003 letter at issue in this case, it remains proper to consider Brandon's affidavit on summary judgment. *Compare Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995).

regard to the prior communications with plaintiff, the February 17 letter's reference to "our previous communication" clearly implicates Brandon. Plaintiff's evidence and inferences therefrom squarely conflict with Brandon's affidavit that he had nothing to do with preparing or sending the letter in question. As a result, there exists a genuine issue of material fact on whether Brandon was part of the plural "we" involved in the debt collection effort at issue in this case, and summary judgment in plaintiff's favor against defendant Brandon is inappropriate.

■ Boyajian, however, undisputedly acted as a debt collector in this case. He is the owner of JBC, has acknowledged that in that capacity he "provides services to clients who have debts that are with consumers that I am engaged in recovering for," Deposition of Jack H. Boyajian, Jan. 27, 2004 [Doc. # 38] at 25, and has acknowledged in deposition testimony that he has sole control over which debt collection letters are sent to consumers:

Q. If a letter went to Ms. Goins, you yourself would decide which letter should go to her?

A. We use several different techniques to decide—I use several different techniques to decide which letters go to whom . . .

. . . . .

Q. Are your collectors allowed to generate or decide what letters go out?

A. No.

Q. Who other than you decides what letters go out?

A. No one.

. . . . .

A. I think you are asking me, did I draft a letter, because the variables are what they are with respect to each named debtor, right? Are you asking me did I formulate the letters as to

what fields should go in there? Right?

Q. Okay.

A. The answer is yes. I have been involved. To most of the degree, I make the final decision on what letters are sent out and what they contain.

Boyajian Deposition Transcript [Doc. # 38] at 37, 39–40. While defendants' Local Rule 56(a)(2) Statement denies that Boyajian is a debt collector, and cites generally to Boyajian's Declaration as evidentiary support, the declaration itself does not state that Boyajian is not a debt collector or was not involved in preparing or sending out the February 17, 2003 letter at issue in this case. *See* Declaration of Jack H. Boyajian [Doc. # 49]. The Court therefore finds that Boyajian was engaged in debt collection activity in this case, and was a debt collector within the meaning of the FDCPA for purposes of this case. *See* 15 U.S.C. § 1692a(6) (defining debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.").

**C. Merits**

■ The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692 includes a non-exhaustive list of conduct that violates the statute, including "(2) [t]he false representation of—(A) the character, amount, or legal status of any debt;" and "(5) [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." §§ 1692e(2)(A), 1692e(5). "[A]n objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is

applied" in determining whether a violation of the FDCPA has occurred. *Russell v. Equifax*, 74 F.3d 30, 34 (2d Cir.1996). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). "This least-sophisticated-consumer standard best effectuates the Act's purpose of limiting the 'suffering and anguish' often inflicted by independent debt collectors." *Id.*

### 1. Amount of the Debt

Plaintiff first argues that defendants falsely represented the amount of the debt plaintiff owed in the February 17, 2003 letter, in violation of 15 U.S.C. § 1692e(2)(A) (prohibiting "[t]he false representation of—(A) the character, amount, or legal status of any debt"); and 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."). The February 17, 2003 letter stated that the "balance" was $10,277.56 and implied that Goins was liable that amount in "restitution" based on "an NSF check(s) written to our above-referenced client," Wilson Suede & Leather. Defendants have acknowledged, however, that the debt owed to Wilson Suede & Leather was based on two checks written by the plaintiff during January 1996, totaling $402.78. *See* Response to Plaintiffs' Interrogatories [Doc. # 38] (listing dishonored checks written by plaintiff referred to JBC for collection, including the two January 1996 checks totaling $402.78 from client "WSU"). Defendants now state that the $10277.56 figure was based on 22 dishonored checks that Goins made out to various merchants, totaling $4851.28, plus a check charge of $25.00 for each check, plus damages equal

to the face amount of each check, which were the maximum available statutory damages JBC could obtain in a civil lawsuit under Conn. Gen.Stat. § 52–565a(c).

■ The amount JBC demanded in its February 17, 2003 letter is grossly misleading. First, the February 17 letter specified only a debt owed to Wilson Suede & Leather, and nowhere informs plaintiff that the claim is also based on debts owed to other merchants. Moreover, the letter claims an amount representing not only the actual debt owed, but the maximum obtainable statutory damages that could be awarded against plaintiff in a civil action. This is impermissible, because "[t]he 'amount of debt' provision is designed to inform the debtor ... of what the *obligation* is, *not* what the final, worst-case scenario *could* be." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir.2003) (emphasis in original). While the letter obliquely informs plaintiff that the $10277.56 amount includes potential statutory damages "as determined by the court," *supra* at 2–3, not actual debt owed, it demands a "balance" of $10,277.56 in bold print at the top of the letter, which under the least sophisticated consumer standard reasonably implies that $10,277.56 is the amount of plaintiff's debt. Finally, although defendants have now justified the $10,277.56 fee by including a $25.00 check charge on each of the 22 dishonored checks claimed, defendants did not disclose the $25.00 check charge to Goins in the February 17 letter. Accordingly, the undisputed evidence shows that the February 17 letter falsely represents the amount of debt owed.

### 2. License

JBC was not licensed in Connecticut as a consumer collection agency at the time defendants sent the February 17, 2003 debt collection notice to plaintiff, and their application for a license has since been

denied. *See* Letter from John P. Burke, Banking Commissioner, State of Connecticut, to Jack Boyajian, Mar. 18, 2004, [Doc. # 60] (denying application for consumer collection agency license that JBC had filed on November 5, 2002).[3] Although the February 17, 2003 letter does not claim that JBC is licensed in Connecticut, plaintiff argues that defendants' unlicensed attempt to collect a debt from plaintiff, violates 15 U.S.C. § 1692e(5) (barring any "action that cannot legally be taken"); § 1692e(9) (prohibiting misrepresentation of document's state authorization or approval); and § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt."). *See also Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993) ("[T]he use of any false, deceptive, or misleading representation in a collection letter violates § 1692e regardless of whether the representation in question violates a particular subsection of that provision.")

 Connecticut requires consumer collection agencies acting within the state to be licensed. *See* Conn. Gen.Stat. § 36a–801(a) ("No person shall act within this state as a consumer collection agency without a consumer collection agency license."),[4] and prohibits a collection agency from, among other things, "institut[ing] judicial proceedings on behalf of others." Conn. Gen.Stat. § 36a–805(a)(1). Considering these provisions in *Gaetano v. Payco of Wisconsin, Inc.,* 774 F.Supp. 1404 (D.Conn.1990), the district court held that a debt collection agency that was unlicensed by the state of Connecticut, which demanded payment of the debt and stated that it would use all means to enforce collection, "violated § 1692e(5) of the FDCPA by threatening to take action that legally could not be taken." *Id.* at 1415.

3. The plaintiff submitted with her reply brief additional documentary support of her claim, including the March 18 denial letter from the Connecticut Department of Banking. Although submitted in reply, the Court finds it appropriate to consider this evidence, as defendants have not disputed that they were unlicensed, cannot claim surprise at the Department of Banking letter, which was directed to defendants in response to their application, and have not sought leave to respond to the evidence. *See Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.,* 215 F.3d 219, 227 (2d Cir.2000).

4. A license is required under Connecticut law if the collection agency "(2) has its place of business located outside this state and collects from consumer debtors who reside within this state for creditors who are located within this state; or (3) has its place of business located outside this state and regularly collects from consumer debtors who reside within this state for creditors who are located outside this state." Conn. Gen.Stat. § 36a–801(a). Here, there is no dispute that Goins is a Connecticut resident, and that JBC is a firm located outside of the state. While defendants argue in their opposition to plaintiff's motion for partial summary judgment that plaintiff has not provided any evidentiary support showing where JBC's client-creditors are located, and that it remains disputed whether JBC "regularly collects" from Connecticut consumers, the Court finds that plaintiff's unchallenged evidence establishes JBC's need for a Connecticut license. Defendants have acknowledged in their responses to plaintiffs' interrogatories that they used form letters aimed at Connecticut debtors from 2001 to the present. *See* [Doc. # 38]; *see also* Deposition Transcript of Jack Boyajian, Jan. 27, 2004 [Doc. # 60] at 71 (explaining bar codes on form letters that reflect "that the transaction was in Connecticut"). Further, the State of Connecticut Department of Banking's March 18, 2004 letter denying JBC a license notes that "it appears that [JBC] has been acting as a consumer collection agency in Connecticut without a license in violation of Section 36a–801(a) of the Connecticut General States. Indeed, between December 2002 and February 2004, 9 Connecticut residents filed with the Division complaints against [JBC] alleging harassment in connection with the collection of debts and, in some cases, disputing the debts." Letter from John P. Burke, Banking Commissioner to Jack Boyajian, Mar. 18, 2004 [Doc. # 60, Ex. P].

*Gaetano* has been followed by several other district courts. *See, e.g. Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471 (M.D.La.1995) (finding violation of § 1692e(5) when unlicensed debt collector attempted to collect a debt from consumer); *Russey v. Rankin,* 911 F.Supp. 1449, 1459 (D.N.M.1995); *Kuhn v. Account Control Technology, Inc.,* 865 F.Supp. 1443, 1451–52 (D.Nev.1994).

Not all courts have adopted a categorical rule that an FDCPA violation occurs whenever an unlicensed debt collector sends out any debt collection notice, and instead some have looked to the content of the notice. Most notably, in *Wade v. Regional Credit Association,* 87 F.3d 1098 (9th Cir.1996), the Ninth Circuit found that the defendant's unlicensed debt collection activity was not a "threat to take action that could not legally be taken" in violation of FDCPA § 1692e(5). The single debt collection agency notice to the plaintiff stated:

> WHY HAVEN'T WE HEARD FROM YOU? OUR RECORDS STILL SHOW THIS AMOUNT OWING.
> If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION. SEND PAYMENT TODAY.
>
> . . . . .
>
> DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED.

*Wade,* 87 F.3d at 1099.

The notice also stated: "This has been sent to you by a collection agency and is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.* The Court of Appeals concluded that "body of the notice was informational, notifying Wade that failure to pay could adversely affect her credit reputation. There was no threat to sue. The least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action." *Id.* at 1100. The court also found that the language to the effect that the notice was an attempt to collect a debt was required by the FDCPA, and was "also informational," not threatening. Because the notice could not be characterized as threatening to take specific action, the court found no FDCPA violation. Similarly, in *Ferguson v. Credit Management Control, Inc.,* 140 F.Supp.2d 1293, 1302 (M.D.Fla.2001), the district court determined no violation of § 1692e(5) had occurred where the debt collection agency "did not hold itself out as a licensed debt collector in Florida. It did not threaten to take legal action if plaintiff did not respond to the notice. Moreover, the only language that Ferguson argues is 'threatening' is required to be in the notice by the FDCPA."

Here, in contrast to *Wade* and *Ferguson,* the debt collection notice contained an unequivocal threat to take action, stating, "[y]ou may wish to settle this matter before *we* seek appropriate relief before a court of proper jurisdiction by a qualified attorney." *See* February 17, 2003 letter [Doc. # 36] (emphasis added). The letter also refers to "our" prior "communication demanding ... that you make restitution," states that JBC's clients "may now assume that you delivered the check(s) with intent to defraud," and refers to "statutory penalties as determined by the court." The letter's references to statutes, attorneys, court, settlement, and restitution, augmented by its aggressive, accusatory tone (e.g. "You have obviously chosen to ignore our previous communication"), bolster its syntax as a threat to sue the plaintiff on the debt. In sum, the letter is far from *Wade's* "prudential reminder" to pay an outstanding debt. On the undisputed facts of this case, the Court concludes that the letter violates the

FDCPA's prohibition of threats to take action that cannot legally be taken. *See* 15 U.S.C. § 1692e(5).

### 3. Improper Threat of Litigation

 Plaintiff further argues that JBC's threat to "seek appropriate relief before a court of proper jurisdiction" violated the FDCPA because a suit on the January 1996 NSF checks was time-barred by the applicable six-year statute of limitations at the time the February 2003 letter was written. Although a debt collector may seek to collect on a time-barred debt, that debt collector may not threaten litigation where such suit would be improper. *Cf. Freyermuth v. Credit Bureau Serv. Inc.*, 248 F.3d 767 (8th Cir.2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.").

 As discussed above, the February 17 letter at issue here unambiguously threatened litigation. Defendants respond by arguing only that the statute of limitations did not bar them from pursuing litigation against Goins because the statute of limitations is not a jurisdictional bar, but merely an affirmative defense that can be waived. As the statute of limitations would be a complete defense to any suit, however, the threat to bring suit under such circumstances can at best be described as a "misleading" representation, in violation of § 1692e. As an officer of the court, Boyajian has an obligation to represent to the court to the best of his knowledge, "after an inquiry reasonable under the circumstances," that the claims presented are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See* Fed.R.Civ.P. 11; *see also State v. Turner*, 267 Conn. 414, 430, 838 A.2d 947 (2004) (defining frivolous action as one in which "the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."). Sanctions therefore would be appropriate if an attorney knowingly filed suit on an undisputedly time-barred claim. *See Steinle v. Warren*, 765 F.2d 95 (7th Cir. 1985) (awarding attorneys fees to opposing party and imposing Rule 11 sanctions where attorney knew claim was time-barred). That the statute of limitations is an affirmative defense does not relieve defendants of their professional responsibility, when they do not dispute the applicability or viability of the defense. Because defendants were not entitled to sue in such circumstances, the threats to sue in the February 17 letter are improper. *See Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala.1987) (finding FDCPA violation where attorney threatened to sue on a time-barred claim).

### 4. Communication with Consumer Known to be Represented by Counsel

Finally, plaintiff argues that defendants improperly communicated directly with her, having received formal notification that she was represented by counsel because she had filed a lawsuit against defendants for their collection efforts in 2002. Under 15 U.S.C. § 1692c(a)(2), a debt collector "may not communicate with a consumer in connection with the collection of any debt ... if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." As the Federal Trade

Commission commentary on this provision explains, "[i]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor." Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50104 (1988).

 Goins' 2002 lawsuit concerned debt collection activity regarding a $402.78 debt owed to Wilson Suede and Leather, a debt which also formed a partial basis for the amount claimed in the February 17, 2003 letter. *See* Response to Plaintiffs' Interrogatories [Doc. # 38]; *Goins v. JBC & Associates, P.C., et al.,* Civ. No. 3:02cv1069 (MRK), 2004 WL 2063562 (D.Conn. Sept. 3, 2004). As defendants do not dispute that the 2002 lawsuit gave them sufficient notice that plaintiff was represented by counsel with respect to the debt on which they sought to collect through the February 17, 2003 letter, or that the February 17, 2003 letter was sent directly to plaintiff, they are liable under § 1692c(a)(2).

### D. Bona Fide Error Defense

Defendants defend their actions in this case primarily by arguing that the February 17, 2003 letter was the result of an unintentional error. In support, defendants state that when JBC learned of Goins' bankruptcy, a hold was placed on her account pursuant to JBC's regular procedures for debtors in bankruptcy or who are represented by counsel. In a Declaration dated May 27, 2004, Boyajian states that "JBC has standardized procedures in place to avoid further communications with the consumer when JBC learns that the consumer is represented by counsel or has filed for bankruptcy protection. Upon receipt of notice of such representa-

tion or filing, codes reflecting such representation or filing are entered into the consumer's file, notifying collectors or attorneys working the file that such representation or filing has taken place. The collectors and/or attorneys are trained and informed that under such circumstances, further communication with the consumer is prohibited. No further collection efforts were to occur as to Ms. Goins master account." Declaration of Jack H. Boyajian, May 27, 2004 [Doc. # 49] at ¶ 5. Boyajian states that the February 17, 2003 letter was "triggered by a later, separate placement by a JBC client of additional bad checks written by Ms. Goins. This new placement resulted in the creation of a separate new master account number. Due to an imperfection in the computer program or an inadvertent creation of a merged account, the computer issued a letter which included information, not only about the newly placed checks, but swept in information concerning the prior placements as well." *Id.* at ¶ 7.

Section 1692k(c) provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages. However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its violation [of the Act] [satisfies the requirements of 1692k(c) ]." *Russell v. Equifax,* 74 F.3d 30, 33–34 (2d Cir.1996).

 Defendants have not met their burden here. Although Boyajian's declaration establishes that hold procedures

were in effect at JBC the time the February 17, 2003 letter was sent, and that JBC received claims for new debts plaintiff owed subsequent to placing a hold on her account, the undisputed fact remains that the February 17 letter (1) sought to collect against a debtor known to have a bankruptcy proceeding pending, and (2) incorporated the earlier debts on which plaintiff was known to be represented by counsel. Thus defendants have not demonstrated the existence of hold procedures which were operative, and cannot ascribe their error as occurring despite maintenance of procedures to avoid it. As Boyajian acknowledges, the computer system did not simply create a new account for Goins based on the new claims, it merged old information from her "master" account. The letter selected to be sent, moreover, referred to "prior communications" that had gone unanswered. And like the previous communications, the February 17, 2003 letter sought to collect on the debt owed to Wilson Suede & Leather. Thus, far from being excused as generated in response to a new claim, the letter referred to a preexisting debt, the attempted collection of which was the subject of two lawsuits against defendants in which plaintiff was represented by counsel. Boyajian offers no explanation about how the procedures were reasonably adapted to avoid merging "held" accounts, or how the selection of a form letter referring to "prior communications" could reflect "maintenance of procedures reasonably adapted to avoid" processing "held" accounts. Indeed, defendants make no claim that the content of the letter was a bona fide error. The Court therefore concludes that defendants cannot prevail as a matter of law on their bona fide error defense.[5]

### E. CUPTA Claim

Plaintiff also seeks summary judgment on her claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110b. Section 42–110b(a) prohibits persons from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To bring an action under CUTPA, however, plaintiff must demonstrate that she has "suffer[ed] any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b." Conn. Gen.Stat. § 42–110g(a). Defendants oppose plaintiff's CUTPA claim on grounds that she cannot satisfy CUTPA's requirement of demonstrating "ascertainable loss."

■ "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 810 (1981). The "ascertainable loss" requirement does not require that a plaintiff prove a specific amount of actual damages. As the Connecticut Supreme Court has explained, " '[a]scertainable' means 'capable of being discovered, observed, or established,' " while " '[l]oss' has been held synonymous with deprivation, detriment and injury. It is a generic and relative term." *Id.* at 613, 440 A.2d 810 (citations omitted). Thus, "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss

---

5. Plaintiff moves to strike various parts of Boyajian's declaration, arguing that the statements are conclusory or do not state admissible facts. As the Court has concluded that defendants cannot prevail on their bona fide error defense, plaintiffs' motion to strike [Doc. # 59] is DENIED as moot.

is not known." *Id.* at 614, 440 A.2d 810. Moreover, "[u]nder CUPTA, there is no need to allege or prove the amount of the ascertainable loss." *Id.* CUPTA specifically permits equitable relief, and thus "expressly contemplates plaintiffs' judgments which do not include an award of money damages." *Id.* at 618, 440 A.2d 810. These comprehensive remedies [are] intended "to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." *Id.*

Under this framework, the Connecticut Supreme Court has found an ascertainable loss where plaintiffs purchased a vehicle that had been advertised as a "full-time four-wheel drive" vehicle, but was in fact "something less desirable than a full-time four wheel drive," *Hinchliffe*, 184 Conn. at 619, 440 A.2d 810, even though plaintiffs were not able to attach a particular dollar amount to their injury from defendant's deception. The Connecticut Supreme Court has also found ascertainable loss where there was evidence that the defendants' use of surveillance cameras pointed at plaintiffs' exotic dance clubs "caused prospective patrons to refrain from entering plaintiffs' establishments," despite a lack of evidence of lost profits. *Service Road Corp. v. Quinn*, 241 Conn. 630, 640–41, 698 A.2d 258 (1997). In *A. Secondino and Son, Inc. v. LoRicco*, 215 Conn. 336, 576 A.2d 464 (1990), however, the defendant's CUTPA counterclaim failed because although he demonstrated that the contractor's failure to provide a written contract containing notice of the right to cancel violated the Home Solicitation Sales Act, an unfair trade practice under CUTPA, he "fail[ed] to present any evidence concerning the nature and extent of the injury sustained." *Id.* at 344, 576 A.2d 464. Similarly, in *Rizzo Pool Co. v. Del Grosso*, 232 Conn. 666, 657 A.2d 1087 (1995), the ascertainable loss requirement was not met where there was no injury

shown to result from defendant's "misrepresentations regarding the effect of the water level of the pond on the price of the swimming pool," and plaintiffs did not claim to have "suffered an ascertainable loss under CUTPA by virtue of the fact that the plaintiff's failure to install the swimming pool deprived them of the benefit of their bargain." *Id.* at 684–85 & n. 30, 657 A.2d 1087 (citation omitted).

■ Plaintiff has not shown her entitlement to summary judgment on this count, because, as in *A. Secondino* and *Rizzo,* she has not provided any basis for a finding that she was ascertainably injured as a result of defendant's February 17, 2003 letter. At best, she has demonstrated a potential injury, resulting from defendants' attempt to collect from her an amount far exceeding the actual obligation owed. Plaintiff, however, has not identified and the Court has not found any authority supporting the position that threatened rather than actual "deprivation, detriment or injury" satisfies the "ascertainable loss" requirement. As construed by the Connecticut Supreme Court and as the plain meaning of the phrase implies, "ascertainable loss" refers to some injury that has occurred, and is therefore "measurable." *Hinchliffe*, 184 Conn. at 614, 440 A.2d 810.

It is possible to speculate that a letter of the kind sent to plaintiff could cause injury in a variety of ways. A consumer may respond to the letter by actually paying an amount far greater than what is actually owed, or may incur other expenses in challenging the debt collection effort. The debt collection practice may unfairly damage the consumer's credit rating, or may cause the consumer emotional distress. The threshold of showing a measurable loss is not great. Plaintiff, however, has not set forth any evidence demonstrating a

loss of any kind.[6] Accordingly, summary judgment on plaintiff's CUTPA claim is denied.

## IV. Conclusion

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment [Doc. # 35] is GRANTED in part as to plaintiffs' FDCPA claims against defendants JBC & Associates, P.C. and Jack H. Boyajian. Plaintiff's motion is DENIED as to plaintiffs' CUTPA claim and her FDCPA claims against defendant Marvin Brandon. Defendants' Motion to Strike [Doc. # 53] is DENIED as moot. Plaintiff's Motion to Strike Portions of Boyajian and Brandon Declarations [Doc. # 58] is DENIED.

IT IS SO ORDERED.

---

6. In her memorandum in support of her motion for partial summary judgment, plaintiff states that she "has ascertainable loss when she got a letter that violated state and federal laws," but offers no explanation of how receipt of such a letter caused a measurable loss. Plaintiff also argues in her memorandum of law that "[h]er monetary loss, to be ascertainable, may be as little as a 33¢ stamp, a toll call, or gas or parking to visit an attorney." Plaintiff's Memorandum in Support of Partial Summary Judgment [Doc. # 37] at 15. Plaintiff has presented no evidence that she experienced any of these losses, however. The affidavit that she submitted in support of her motion is silent on the issue of injury or loss.