Filed 5/13/15  Mirtorabi v. Action Foreclosure Services

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| AZAM MIRTORABI et al., | B252084 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC482626) |
| v. | |
| ACTION FORECLOSURE SERVICES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.
Robert L. Hess, Judge.  Affirmed in part and reversed and remanded in part.


Brentwood Legal Services, Steven L. Zelig for Plaintiffs and Appellants.


Greenwald & Hoffman, Paul E. Greenwald for Defendants and Respondents.

_____

The trial court ended plaintiffs' wrongful foreclosure lawsuit by granting summary judgment for defendants. An independent review shows that this lawsuit largely fails because plaintiffs voluntarily paid the debt secured by defendants' trust deed, and no foreclosure sale took place. By the same token, plaintiffs have shown a triable issue of fact as to whether the creditor violated unfair debt collection practices laws. We remand for trial on that issue.

## FACTS

This case involves a condominium in San Pedro (the Property). Plaintiffs Azam and Mo Mirtorabi held a second deed of trust on the Property. They obtained the trust deed from their former attorney in 2008, to repay a debt of some $92,000 he owed them.

In May 2010, defendant Action Foreclosure Services, Inc. (AFS), filed a notice of election to sell on behalf of the beneficiary of the first trust deed on the Property. A trustee's sale was scheduled. Before the sale was held, defendant Red Curb Investments purchased the note for $92,043, on September 9, 2010, and became the beneficiary under the first trust deed.

After acquiring the first trust deed, Red Curb deposited $50,000 with AFS, and instructed AFS to halt the sale if the bidding exceeded the full credit amount plus $50,000. The trustee's sale scheduled for September 13, 2010, was postponed. Trustee's sales on October 15 and 22, 2010, were halted when the Mirtorabis' bid of $156,000 exceeded the full credit amount plus $50,000.

The Mirtorabis produced evidence of e-mails between Red Curb, AFS, and the auctioneer, suggesting that the auction was postponed whenever interested bidders appeared, to prevent the price from exceeding the $155,000 that Red Curb wanted to pay to purchase the Property. The Mirtorabis persistently called AFS to say that they wished to pay off the first trust deed, but were either not given a payoff amount or cited an inflated amount. The Mirtorabis paid delinquent real estate taxes of over $13,000 on the Property. When the Mirtorabis attempted to pay off the debt on Red Curb's first trust deed, their tenders were rejected. The payoff amount rose precipitously: the Mirtorabis

2

posit that Red Curb and AFS overcharged for interest, trustee's fees, and costs (including attorney fees and house repairs that were not performed).

On March 8, 2011, the Mirtorabis foreclosed on their second trust deed. They became owners of the Property, subject to Red Curb's first trust deed, after bidding $123,990. There were no other bidders.

AFS filed a new notice of trustee's sale on the first trust deed held by Red Curb, setting a sale date of April 7, 2012. AFS claimed that the amount owing was $149,024, including principal of $84,788, interest of $11,528, and attorney fees of nearly $50,000.[1] The sale was postponed many times.

The Mirtorabis and Red Curb met to negotiate a payoff of the first trust deed. Though face-to-face negotiations failed, an oral consensus was reached by counsel. The Mirtorabis believed that they had an agreement to pay $93,500 in exchange for a reconveyance, and wired that sum to AFS in August 2011. Defendants' attorney drafted a proposed settlement agreement; however, counsel for the Mirtorabis rejected it and the Mirtorabis did not sign it because it contained a release of claims. It is undisputed that there is no signed, written settlement agreement. AFS returned the money to the Mirtorabis in November 2011.

The Mirtorabis resumed their efforts to pay off the first trust deed. In April 2012, the Mirtorabis filed this lawsuit. On August 3, 2012, the Mirtorabis tendered a payoff of $135,332.73. Red Curb accepted the tender, and the Property was fully reconveyed to the Mirtorabis on October 26, 2012. The Property was never sold at auction on the first trust deed. It is undisputed that the Property belongs to plaintiffs, free and clear.

## PROCEDURAL HISTORY

The Mirtorabis filed suit in April 2012. They obtained a temporary restraining order, but their request for an injunction was denied. Defendants cross-complained to

---

[1]     When the Mirtorabis claimed that the fees were padded and fraudulent, Red Curb's attorney admitted that he "accidentally" billed $15,000 in noncompensable fees.

3

foreclose on the first trust deed. In the fall of 2012, the Mirtorabis paid off Red Curb's secured debt, and the Property was reconveyed to them.

In 2013, defendants moved for summary judgment. Over plaintiffs' opposition, the trial court granted the motions and entered judgment for defendants. The Mirtorabis appeal.

## DISCUSSION

Summary judgment is granted if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A moving defendant must show the existence of a complete defense, or that one or more elements of the plaintiffs' cause of action cannot be proven; the burden then shifts to the plaintiffs to show a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p).) On appeal, we independently examine the record and review the trial court's ruling de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) We strictly scrutinize the moving party's papers, construing the facts and resolving all doubts and ambiguities in the evidence in favor of the responding party. (*Innovative Business Partnerships, Inc. v. Inland Counties Regional Center, Inc.* (2011) 194 Cal.App.4th 623, 628; *Sellery v. Cressey* (1996) 48 Cal.App.4th 538, 543.)

The Mirtorabis challenge defendants' evidence. Yet they do not offer legal authority explaining why the trial court erred by overruling some of their objections, or by sustaining defendants' objections to evidence plaintiffs submitted in opposition to summary judgment. In fact, plaintiffs complain on appeal about defense evidence that the trial court *excluded.* The trial court's evidentiary rulings are reviewed for an abuse of discretion, and the Mirtorabis have not carried their burden of showing that the trial court's order exceeds the bounds of reason, as is required for reversal. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)

1. *Wrongful Foreclosure Claim*

Plaintiffs allege that they had a right to cure defaults on the first trust deed, and defendants had a duty not to fabricate excessive and exaggerated payoff amounts.

4

Defendants inflated their legal expenses and submitted false itemizations to plaintiffs. As a result, defendants engaged in a fraudulent foreclosure of the Property.

"Wrongful foreclosure is an action in equity where a plaintiff seeks to set aside a foreclosure sale." (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1097.) The elements of the claim are: (1) the trustee caused an illegal, fraudulent or willfully oppressive sale of real property pursuant to a deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the trustor tendered the amount of the secured indebtedness or was excused from tendering. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 800.)

The Mirtorabis cannot establish their claim, as a matter of law. Defendants did not conduct a sale pursuant to the first trust deed. Instead, the Mirtorabis tendered payoff money to defendants prior to auction, defendants accepted the tender, and the Property was reconveyed to plaintiffs. Plaintiffs cannot maintain a cause of action to set aside a foreclosure sale that never took place. It is undisputed that the Property belongs to the Mirtorabis, and was not lost to a third party in foreclosure, because the Mirtorabis redeemed the Property from a lien prior to foreclosure. (Civ. Code, §§ 2903, 2904.) Appellants cite no authority for the proposition that they can collect damages without an actual sale of the Property.

## 2. *Violation of Civil Code Section 2924*

Plaintiffs allege a violation of Civil Code 2924, which relates to the exercise of a power of sale and exempts the trustee from liability for error resulting from its reliance on information provided in good faith by the beneficiary regarding the amount of the default. This claim is moot. Any procedural defect in exercising the power of sale is irrelevant because no sale occurred after the Mirtorabis paid off Red Curb's first trust deed.

## 3. *Fraud and Negligent Misrepresentation*

Plaintiffs assert that defendants owed a duty, as holder of the first trust deed, to fairly and accurately account to them, to enable plaintiffs to preserve their security.

5

Defendants allegedly defrauded the Mirtorabis by falsifying the amount of the arrearages; submitting false bills; and exaggerating legal fees.

Plaintiffs rely on *Block v. Tobin* (1975) 45 Cal.App.3d 214 for the idea that the trustee and beneficiary can be sued for actual deceit if they issue a notice of public auction when, in fact, the property was to be sold secretly, and potential buyers suffered damages when thwarted from bidding at an auction. The *Block* case is not on point because it involves a fraudulent sale in foreclosure to a secret buyer who paid less than the fair market value. It bears repeating that after the Mirtorabis filed this lawsuit, they voluntarily tendered the debt owing on Red Curb's trust deed and no foreclosure sale was conducted, unlike *Block*.

The Mirtorabis owned the Property since 2011, and made repeated claims that defendants were trying to defraud them by overstating the debt owed on the first trust deed. They filed this lawsuit, alleging fraud. After filing suit, plaintiffs decided that $135,332 was an acceptable price to pay to exonerate the debt owed on defendants' secured note, including attorney fees. The Mirtorabis did not reserve their right to claim fraud after receiving a reconveyance.[2] A party who is aware of (and complains of) fraud, and who subsequently enters an arrangement with his opponent on the subject matter constituting the fraud, waives his right to damages for fraud. (*Schied v. Bodinson Mfg. Co.* (1947) 79 Cal.App.2d 134, 142.)

*4. Negligence*

The Mirtorabis allege that "as of the filing of this Complaint [April 11, 2012], Plaintiffs have not received any legitimate or authentic notices, bills, demands for payment or other paperwork concerning the first trust deed" from defendants, and this failure to maintain accurate loan records falls below the standard of care. The record

---

[2]      Plaintiffs point to a declaration from Azam Mirtorabi stating that "we were forced to pay $135,000 while reserving our rights." Absent proof that plaintiffs communicated a reservation of rights *to defendants* when tendering payment, plaintiffs' unexpressed belief is ineffectual. (See *California Union Ins. Co. v. Poppy Ridge Partners* (1990) 224 Cal.App.3d 897, 901-902.)

6

shows that subsequent to the filing of the complaint, plaintiffs received a new demand for payment and agreed to pay $135,332. The incorrect payoff demands were superseded when plaintiffs received an acceptable demand and tendered their payoff. This claim is moot.

## 5. *Breach of Settlement Agreement*

Plaintiffs allege that they entered an agreement with Red Curb in July 2011 to pay $93,500 for a reconveyance of the first deed. They tendered this amount, but Red Curb refused to reconvey the Property when plaintiffs refused to sign a release of claims.

Parties may agree to compromise a dispute, even before litigation is filed, if they manifest a mutual intent to resolve their differences. (*Putman v. Cameron* (1954) 129 Cal.App.2d 89, 94-96 [prelitigation oral compromise of a dispute over damage to rented premises caused by a tenant].) However, the statute of frauds requires that an agreement to transfer an interest in real property must be in a writing signed by the party to be charged. (Civ. Code, § 1624, subd. (a)(3).)

It is undisputed that the parties did not enter a written compromise in 2011. Red Curb did not agree in writing to convey its interest in the Property to the Mirtorabis. Nor did Red Curb agree in writing to forbear from exercising its contractual right to foreclose on its deed of trust. (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552-555.) The Mirtorabis did not take the oral agreement out of the statute of frauds by wire-transferring money to defendants. (*Id.* at pp. 555-556.)

The oral agreement purporting to resolve a dispute over a debt and obliging Red Curb to reconvey an interest in the Property is invalid. Accordingly, plaintiffs cannot maintain their claims for breach of a settlement agreement, or for fraud and misrepresentation relative to the agreement. In addition, statements made during prelitigation discussions to reach a settlement and avert a judicial proceeding between adversaries are absolutely privileged. (Civ. Code, § 47, subd. (b); *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360-361.)

7

*6. Breach of Fiduciary Duty*

The Mirtorabis contend that the trustee, AFS, owed them a fiduciary duty, which it breached by accepting wire-transferred funds in 2011, then wrongfully retaining the funds for a period of time despite knowing that Red Curb did not intend to accept the funds or honor the purported oral settlement agreement. "The trustee of a deed of trust is not a true trustee, and owes no fiduciary obligations; he merely acts as a common agent for the trustor and the beneficiary of the deed of trust." (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 677; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 508.) This claim fails as matter of law.

*7. Interference With Contract*

The Mirtorabis allege that the defendants (except Red Curb) interfered with the Mirtorabis' interest in the Property as owners of the second trust and, after they foreclosed on the second trust deed, as owners of the Property. There is no showing that plaintiffs had a valid contract with a third party; that defendants knew of the contract; that defendants induced a breach of the contract; and that defendants caused an actual disruption of the contractual relationship. These are the elements of a claim for intentional interference with contract. (*Pac. Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) The Mirtorabis and Red Curb never contracted with each other and the other defendants did not induce a breach of contract.

With respect to the Mirtorabis' claim for *negligent* interference with contract, no such cause of action exists. "[T]he courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome." (*Fifield Manor v. Finston* (1960) 54 Cal.2d 632, 636.) The claim fails as a matter of law.

*8. Fair Debt Collection Practices Act*

The Mirtorabis assert that defendants violated the Rosenthal Fair Debt Collections Practices Act (Rosenthal), the purpose of which is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."

8

(Civ. Code, § 1788.1, subd. (b).) Debt collection is any act or practice in connection with consumer debts; consumer debt is money or property owed by a natural person by reason of a credit transaction. (Civ. Code, § 1788.2, subd. (b), (f).) Rosenthal requires debt collectors to comply with the federal Fair Debt Collection Practices Act (FDCPA). (Civ. Code, §1788.17; 15 U.S.C. § 1692 et seq.)

Plaintiffs alleged that the trustee AFS and Red Curb are "debt collectors" under Rosenthal. A debt collector is "any person who, in the ordinary course of business, regularly, on behalf of himself [ ] or others, engages in debt collection." (Civ. Code, § 1788.2, subd. (c).) The Legislature expressly exempts a trustee who issues a notice of default from incurring liability under Rosenthal. (Civ. Code, § 2924, subd. (b). See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1261-1264, and *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1375-1377 [FDCPA claim against a trustee fails because the trustee's act of giving notice of a foreclosure sale on behalf of the lender does not constitute debt collection].) The Rosenthal claim against AFS in its role as trustee fails as a matter of law.[3]

While the state Legislature exempted trustees from Rosenthal, it did not exempt lenders or holders of trust deeds. Federal courts have "rejected[] the contention that merely because a creditor has a secured claim it cannot be a 'debt collector' under the Rosenthal Act." (*In re Ganas* (Bankr. E.D. Ca. 2014) 513 B.R. 394, 401.) "'It is plain that the California legislature understands the Rosenthal Act may apply to foreclosure proceedings . . . the omission of lenders and servicers from [Civil Code section] 2924(b) means that such actors may be held liable for any unlawful debt collection activities during foreclosure.'" (*Id.* at p. 403.) A comprehensive analysis of the issue (including Rosenthal's legislative history, in an addendum) is contained in *In re Landry* (Bankr. E.D.Cal. 2013) 493 B.R. 541, 548-558, and concludes that the creditor on a debt secured

---

[3]     Plaintiffs did not amend their pleading to assert a cause of action under FDCPA.

9

by a real property is, in fact, a debt collector. On this authority, we reject defendants' claim that a mortgage obligation is not "consumer debt."

On summary judgment, Red Curb argued that its relationship with the Mirtorabis "is not one of debtor-creditor." This claim is belied by the evidence: in late 2011, Red Curb sent the Mirtorabis a notice under the federal fair debt collection act, identifying itself as a "creditor" attempting to collect a debt from the Mirtorabis. At that point, the Mirtorabis were the owners of the Property, indebted to Red Curb on the note secured by the first trust deed, not merely the holders of a second trust deed. In a declaration in support of summary judgment, Red Curb's president does not deny that Red Curb's business is collecting debts.

A debt collector is barred from making false, deceptive or misleading representations in connection with the collection of any debts, and from using unfair or unconscionable means to collect a debt. (Civ. Code, § 1788.17; 15 U.S.C. § 1692e, f.) Falsely telling a debtor that he owes more than the actual amount is an actionable unfair debt collection practice. (*Irwin v. Mascott* (N.D.Cal. 2000) 112 F.Supp.2d 937, 954-955; *Goins v. JBC Associates, P.C.* (D.Conn. 2005) 352 F.Supp.2d 262, 269.)

The Mirtorabis have adequately shown a material dispute with respect to the honesty and fairness of Red Curb's debt collection efforts. The monthly payment to service Red Curb's note was $850.91. In October 2010, the payoff demand was $84,788; in November 2010, it was $90,014; in January 2011, it was $106,660; in March 2011, it was $109,663; in December 2011, it was $145,764; on April 13, 2012, it was $149,024; on April 27, 2012, it was $134,134. After the Mirtorabis filed this lawsuit, defense counsel admitted that he "accidentally" charged the Mirtorabis with $15,000 in nonrecoverable legal fees. A lender may be vicariously liable for the unfair debt collection practices of its law firm. (*Huy v. Nelson & Kennard* (E.D.Cal. 2013) 931 F.Supp.2d 1080, 1088-1094.)

The inadequately documented precipitous rise (and decline) of the debt claimed by Red Curb is suspicious. A trier of fact could find that Red Curb's debt collection demands were false and deceptive, and misrepresented the actual amount owing. It

10

should not have required the filing of a lawsuit to discover that Red Curb's attorney was adding illegal fees to the payoff amount. Red Curb may be liable for statutory damages and attorney fees. (Civ. Code, § 1788.30, subds. (b), (c).) The case shall go forward on the Rosenthal claim. Plaintiffs may request a different trial judge on remand. (Code Civ. Proc., § 170.6, subd. (a)(2); *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 765-766; *Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 556.)

*9. RICO Violation*

The Mirtorabis allege that defendants engaged in a pattern of racketeering activity by falsifying invoices and sending them by mail and wire; publishing notices that slandered title to the Property; giving notice of foreclosure sales, then cancelling them without notice; and sending deceptive and fraudulent letters and e-mails.

To state a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), plaintiffs must allege that defendants conducted an enterprise through a pattern of racketeering activity, causing injury to plaintiffs' business or property. (18 U.S.C. § 1964(c); *Ove v. Gwinn* (9th Cir. 2001) 264 F.3d 817, 825.) A "pattern" is not shown by one victim, one injury, and one scheme. (*Paradise Hotel Corp. v. Bank of Nova Scotia* (3d Cir. 1988) 842 F.2d 47, 53.) A showing of "injury" under RICO requires proof of concrete financial loss to one's business or property—neither intangible losses to property nor personal injury (such as annoyance or emotional distress) are compensable. As a result, if one is made financially whole by some means, damages for interim distress cannot be recovered under RICO. (*Oscar v. University Students Co-op. Ass'n* (9th Cir. 1992) 965 F.2d 783, 787, fn. 5.)

In this instance, the Mirtorabis did not allege a pattern of repeated racketeering involving criminal types of behavior. Rather, the complaint only alleges that plaintiffs personally were annoyed or inconvenienced by defendants' actions. The Mirtorabis demand that defendants somehow prove that this was an isolated event, not a regular business practice. Defendants cannot prove a negative.

The Mirtorabis cannot show a compensable injury, because they did not suffer a tangible loss of property: they were made whole when they paid off the first trust deed,

11

obtained a reconveyance, and now own the Property free and clear. Defendants' behavior caused a loss of time and, apparently, a big headache. Plaintiffs do not point us to any specific financial loss in their brief, though they state that defendants "attempted to obtain fees and charges that were beyond excessive and did not mirror 'actual expenses.'" Defendants' failed attempt to obtain excessive fees and charges is not a concrete injury to business or property under RICO.

10. *Intentional Infliction of Emotional Distress*

The tort of intentional infliction of emotion distress requires conduct that is "outrageous" and "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579, 593.) The Mirtorabis declare that they were very distressed by defendants' conduct in refusing to provide proper loan documentation; failing to give notice of cancelled auctions or answer simple inquiries; exaggerating the debt owed and making misrepresentations; by scheduling foreclosure proceedings even though plaintiffs were trying to pay off the debt and wiring money; and entering a false settlement agreement. They declare that this conduct inconvenienced them by requiring long drives, waiting, writing letters and e-mails, and caused them stress.

The Mirtorabis complain at length in their brief about Red Curb's motives. The motives of a beneficiary are not relevant. The contractual rights contained in the deed of trust give the beneficiary the right to foreclose under a power of sale following a default. The beneficiary is entitled to exercise its contractual rights and act in its own economic self-interest, without being bound by a duty of good faith. (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 526.)

While defendants' conduct was unprofessional, this was a business deal in which defendants exercised their rights under the first trust deed to declare a default and proceed with foreclosure. There is no showing that "in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated [plaintiffs]. Thus, [plaintiffs] cannot state a claim for intentional infliction of emotional distress." (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009.)

12

## DISPOSITION

The judgment in favor of Action Foreclosure Services is affirmed. The judgment in favor of Red Curb Investments is reversed. The case is remanded for further proceedings on the Fourteenth Cause of Action for violation of the Rosenthal Fair Debt Collection Practices Act. The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.