**Susan S. MORGAN and Larry D. Morgan, Plaintiffs,**

v.

**CREDIT ADJUSTMENT BOARD, INC., Defendant.**

Nos. Civ.A. 3:97CV457, Civ.A. 3:97CV458.

United States District Court,
E.D. Virginia,
Richmond Division.

March 18, 1998.

Dale Wood Pittman, Petersburg, VA, for Larry D. Morgan, Susan S. Morgan.

James Curie Skilling, Cherry, Seymour & Skilling, Richmond, VA, for Credit Adjustment Board, Inc.

## *MEMORANDUM*

MERHIGE, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment. The motions have been fully briefed and argument has been heard. For the reasons which follow, the Court will GRANT Plaintiff's Motion for Summary Judgment, and DENY Defendant's Motion for Summary Judgment.

### BACKGROUND

On June 13, 1996, Defendant Credit Adjustment Board, Inc. ("CAB") sent a dunning letter to Plaintiff Ms. Morgan in an attempt to collect a debt of $7.77 allegedly owed to Radiology Associates of Richmond, Inc. Defendant initiated similar collection activities against Mr. Morgan by sending an identical dunning communication, also on June 13, 1996, in an effort to collect a debt of $3.05 also allegedly owed to Radiology Associates of Richmond Inc. The letters received by the two plaintiffs are identical:

> An important matter demanding your immediate attention has been reported to this office. You should contact this office not later than *June 20, 1996* to conclude this matter.
>
> *IMPORTANT—To stop further action, pay your account in full to this office. Return this letter with your payment in order to receive proper credit.

Complaint at Ex. A. Below this portion of the letter, which is double-spaced in the actual letter, is the proper validation language, in single-space type, in the same style and size type font as the rest of the correspondence.

Plaintiffs filed their Amended Complaint on October 20, 1997, and the Court consolidated Mr. Morgan's and Mrs. Morgan's cases on November 26, 1997. Plaintiffs seek actual damages, statutory damages, attorney's fees, and costs. On February 24, 1998, the Court entered a Rule 41(a) Stipulated Order dismissing the Plaintiffs' claims under 15 U.S.C. §§ 1692d, 1692d(5), 1692f, and 1692f(1). The only claims remaining before the Court are Mr. and Mrs. Morgan's claims raised under 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692g arising from CAB's initial written communications to each of the plaintiffs.

## STANDARD

### A. *Summary Judgment Standard*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). The burden rests on the movant to show that there is an absence of a genuine issue concerning any material fact and the non-moving party must only show, in order to survive the movant's motion, that there is evidence from which a finder of fact "might return a verdict in his favor." *Anderson*, 477 U.S. at 257.

### B. *Standard For Analyzing FDCPA Claims*

██ The FDCPA was enacted to protect consumers from abusive and deceptive debt collection practices, and to ensure that non-abusive debt collectors would not be competitively disadvantaged. 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, three requirements must be satisfied: (1) the plaintiff who has been the target of collection activity must be a "consumer" as defined in § 1692a(3); (2) the defendant collecting the debt must be a "debt collector" as defined in § 1692a(6); and (3) the defendant must have engaged in any act or omission in violation of the FDCPA. In evaluating alleged violations of the Act, the Fourth Circuit generally applies the objective "least sophisticated consumer" standard. *U.S. v. National Fin. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir. 1996). In adopting this standard, the Fourth Circuit stated:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law ... While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.

*Id.* at 136 (citations omitted); *see also Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996) ("the standard is low, close to the bottom of the sophistication meter"). With these principles in mind, the Court will review the parties' cross-motions for summary judgment.

## ANALYSIS

### A. *Standing*

██ Defendant argues that Mr. Morgan lacks standing to bring a cause of action under the FDCPA because he stated in his deposition that he did not recall if he had read or received CAB's collection notice. Mr. Morgan's testimony was that he could not recall whether he read the letter. There seems to be no dispute that he received the letter as he provided it as an attachment to his Complaint. CAB's argument that Mr. Morgan never read the letter is "of no moment on the issue of whether a violation has occurred." *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1450 (D.Nev. 1994); *see also, Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2nd Cir.1996) (holding the FDCPA is a remedial, strict liability statute

requiring no proof of deception or actual damages to obtain its statutory remedies); *Savino v. Computer Credit, Inc.*, 960 F.Supp. 599, 605 (E.D.N.Y.1997) (rejecting as "contrary to the applicable law" the debt collector's argument that consumer was barred from receiving damages because he did not receive the letter).

## B. *FDCPA Validation Notice: 15 U.S.C. § 1692g*

As an initial matter, the Court concludes that the first two requirements for establishing violations of the FDCPA are met. Plaintiffs are consumers for purposes of the FDCPA as defined by 15 U.S.C. § 1692a(3). Mrs. Morgan's debt was for medical services, incurred primarily for personal, family, or household purposes, and was a "debt" as defined by the FDCPA at 15 U.S.C. § 1692a(5). Additionally, CAB is a debt collector for purposes of the FDCPA.

Plaintiffs first claim that CAB violated the FDCPA because its collection letter contained language that contradicted and overshadowed the debt validation language required by 15 U.S.C. § 1692g. Section 1692g of the FDCPA requires a debt collector to provide, in its initial communication with a consumer (or within five days thereafter), a written debt validation notice informing the consumer of the amount of the debt and the name of the creditor to whom it is owed, together with the following three statements notifying consumers of specific rights afforded them by Congress and the corresponding duties imposed on the debt collector:

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(3–5). Subsection (b) requires the collector in the event of a timely validation request to cease collection of the debt or the disputed portion until the requested verification or identity of the original creditor is mailed to the consumer.

■ To be adequate, the "validation notice" must be prominent and placed in such a way as to be noticed by the unsophisticated consumer. *U.S. v. National Fin. Serv.*, 98 F.3d 131, 139 (4th Cir.1996); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991) ("[A] debt collector does not comply with § 1692g merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor.") (citation and quotation omitted). In addition, the notice must not be overshadowed or contradicted, in form or content, by other messages or notices appearing in the collection letter or subsequent correspondence within the validation period. *See Terran v. Kaplan*, 109 F.3d 1428, 1430–31 (9th Cir.1997); *National Financial Services*, 98 F.3d at 139; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir. 1996); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996); *Miller*, 943 F.2d at 484; *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir.1991); *Swanson v. Southern Oregon Credit Service Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988). "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell*, 74 F.3d at 35.

■ The overshadowing/contradiction doctrine is applicable in two contexts. First is format overshadowing: "The statute is not satisfied merely by inclusion of the required debt validation notice; the notice must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor." *Swanson*, 869 F.2d at 1225.

The second application of the overshadowing/contradiction doctrine, applicable here, occurs where language which accompanies the validation notice is inconsistent with and therefore contradicts the substance of the rights and duties imposed by § 1692g(a). *See Avila*, 84 F.3d at 222. The Court concludes that Defendant's dunning letter violates section 1692g. The letter warns that "An important matter demanding your immediate attention has been reported to this office. You should contact this office not later than *June 20, 1996* to conclude this matter." Plaintiffs' Complaint at Ex. A. The language demanding "immediate attention" and insisting that the debtor contact the office within seven days from the date of the letter could very likely confuse the least sophisticated debtor, who could reasonable interpret the notice as a demand for immediate payment or immediate action. A demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts § 1692g(a) and thus violates the Act. *See U.S. v. National Financial Services*, 98 F.3d 131, 139 (4th Cir.1996); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir.1996); *Miller v. Payco–General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988).

Furthermore, courts have found a violation of § 1692g when such language is combined with the threat of immediate adverse action. *See Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir.1996). Here, CAB's debt collection notice warns, "To stop further action, pay your account in full to this office." Given the breadth of protections FDCPA provides to debtors, this statement is both misleading and false. Plaintiffs, in fact, had many options for stopping "further action." Given such contradictory and ambiguous language, an unsophisticated debtor could be easily confused about the response time and the consequences of failure to pay the debt, and therefore forego the protections afforded by the statute. On these facts, the Court concludes that the collection letter sent by CAB failed to effectively convey the validation notice to Plaintiffs. Accordingly, the Court finds that CAB's notice violates § 1692g as a matter of law and grants summary judgment on this issue.

## C. *15 U.S.C. § 1692e(5) and e(10)*

Plaintiffs also contend that the collection notice sent by CAB improperly threatened legal action in violation of 15 U.S.C. §§ 1692e(5) and (10). Section 1692e of the FDCPA establishes a broad ban on all false and misleading means of debt collection. Specifically, the statute prohibits:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(5), (10).

A collection notice violates § 1692e(5) if: (1) a debtor would reasonably believe that the notice threatens legal action; and (2) the debt collector does not intend to take legal action. *U.S. v. National Fin. Serv., Inc.*, 98 F.3d 131, 135 (4th Cir.1996). According to the Fourth Circuit, "the test is the capacity for the statement to mislead; evidence of actual deception is unnecessary." *See id.*, 98 F.3d at 139. Under the standard adopted by the Fourth Circuit, the least sophisticated debtor could very easily interpret the collection notice command " *IMPORTANT—to stop further action, pay your account in full to this office" to mean that legal action would be taken for failure to pay the alleged debt. It is also clear from the record that CAB did not intend to take any legal action. Mr. Roupas, President of CAB, testified in deposition that the only potential action taken by CAB after a debtor fails to respond to the initial dunning letter is making phone calls to the debtor. Roupas Dep. at pages 19–23, 29–36. Congress has seen fit to provide a plethora of protections to debtors, and debt collection agencies are not entitled to send collection notices that confuse debtors about their rights by making ambiguous threats, such as CAB's threat of "future action," and thereby secure faster or larger repayments. Thus, the Court concludes that

CAB's debt collection notice violates section 1692e(5).

Furthermore, the same statements that form the basis of liability under sections 1692g and 1692e(5) also create liability under section 1692e(10). Pursuant to that provision, debt collectors are prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt...." § 1692e(10). Not only did CAB's notice create confusion about whether the "action" that was threatened was legal action, but also the notice could easily be interpreted by the least sophisticated consumer as creating a false sense of urgency, which also violates the FDCPA. *See The FTC Official Staff Commentary on the Fair Debt Collection Practices Act,* 53 Fed.Reg. 50097–50110 (1988) (stating that "[i]t is a violation to send any communication that conveys to the consumer a false sense of urgency"); *see also, Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993). Thus, the Court will GRANT Plaintiffs' motion for summary judgment on their claims under sections 1692e(5) and 1692e(10).

### D. *Civil Penalties*

■ Pursuant to 15 U.S.C. § 1692k, a plaintiff who successfully brings a FDCPA action is entitled to an award of actual and statutory damages as well as costs and reasonable attorney's fees. § 1692k(a). Setting the amount of statutory damages is generally left to the discretion of the court, but the FDCPA does provide several factors to be considered in making the determination. § 1692k(b). Specifically, the court is required to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." § 1692k(b)(1). A debt collector can only avoid civil liability if he/she can prove by a preponderance of the evidence that "the violation was not intentional and resulted from a bona fide error...." 1692k(c).

In the instant case, the Defendant has not met its burden of proof to demonstrate that the violation was not intentional. Neither is there evidence that the violation was intentional, although logic would suggest that debt collection letters such as the one sent by CAB are designed and intended to create a sense of urgency and ambiguity regarding the debtor's rights in order to increase debt collection agencies' success rates in recovering alleged debts. There is no evidence that CAB has violated the FDCPA in any manner other than the violations contained in this particular dunning letter, and the Court notes that this same debt collection notice was previously held by another court in this district to be in compliance with the FDCPA. The Court is also mindful of the Fourth Circuit's guidance in deciding proper statutory damages awards that "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *U.S. v. National Fin. Servs., Inc.,* 98 F.3d 131, 141 (4th Cir.1996). The Court will award each of the Plaintiffs statutory damages in the amount of $300.00, for a total of $600.00, in addition to the costs incurred in pursuing this matter, including reasonable attorneys' fees.

An appropriate Order will issue.

### FINAL ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. Upon due consideration, for the reasons stated in Memorandum this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that

(1) Plaintiffs' Motion For Summary Judgment be, and the same is, hereby GRANTED;

(2) Judgment is hereby entered for Plaintiffs on their claims brought under 15 U.S.C. § 1692g, § 1692e(5), and § 1692e(10) and awards each of the Plaintiffs statutory damages in the amount of $300.00, for a total of $600.00

(2) Defendant's Motion For Summary Judgment be, and the same is, hereby DENIED;

(3) Defendant's Motion To Dismiss be, and the same is, hereby DENIED as MOOT; and

(4) Plaintiffs shall file, within fifteen (15) days of this date, appropriate affidavits in reference to their claims for counsel fees incurred in bringing claims under 15 U.S.C. § 1692g, § 1692e(5), and § 1692e(10), detailing the nature of the legal services performed.