Gilbert J. GERVAIS, Plaintiff,

v.

RIDDLE & ASSOCIATES, P.C., Defendant.

No. 3:03 CV 2102(PCD).

United States District Court, D. Connecticut.

March 31, 2005.

Zenas Zelotes, Groton, CT, for Plaintiff.

David S. Samuels, Jason Marc Kuselias, Robinson & Cole, Hartford, CT, for Defendant.

***RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION***

DORSEY, District Judge.

Plaintiff and Defendant cross-move for summary judgment. Plaintiff also moves

for conditional certification to the Connecticut Supreme Court. For the reasons stated herein, Defendant's motion for summary judgment is **denied**, Plaintiff's motion for summary judgement is granted, and Plaintiff's motion for conditional certification is **denied**.

## I. Background [1]

Defendant Riddle & Associates, P.C. ("Riddle") is a professional corporation organized under the laws of Utah and operates as a law firm specializing in consumer debt collection.

Plaintiff Gilbert J. Gervais had a credit card issued by MBNA American. He ceased making payments and defaulted on this account in the amount of $8,115.92, not including interest. The most recent activity on the MBNA account was in September 1993. Defendant waived interest of more than ten years on the amount owed.

In November 2003, Capital Acquisitions and Management Company, Inc. ("CAMCO") retained Defendant to recover on Plaintiff's past due account. Plaintiff's account was originally owed to MBNA, but now it is owed to and owned by CAMCO. On November 7, 2003, Defendant sent Plaintiff a collection letter seeking payment on the debt and offering a discount for prompt payment. Defendant's President, Jesse L. Riddle, who is an attorney, personally drafted and approved the language and template used in this letter. From mid-November until the end of November, Defendant attempted unsuccessfully to contact Plaintiff by telephone eleven times, leaving several messages instead. The messages generally stated

Hello. This is the law firm of Riddle & Associates at 1–800–225–5050 with a message regarding an important legal

matter. Please call our office at 1–800–225–5050 and refer to reference number [ ].

The last message was left on or about November 30, 2003. Plaintiff did not return any of these messages, nor did Defendant ever speak directly with Plaintiff, At no time did Plaintiff ever dispute the debt, either in writing or orally.

At the time the letter was sent to Plaintiff, Defendant was authorized and licensed as a "Consumer Collection Agency" by and through the Banking Commissioner, of the State of Connecticut, Department of Banking, license no. 9166, to collect debts under the name "Riddle & Associates, P.C."

On or about December 4, 2003, Defendant was contacted by Plaintiff's attorney Zenas Zelotes who claimed, on behalf of Plaintiff, that Defendant's collections efforts violated the Fair Debt Collection Practices Act. Zelotes threatened to bring suit. Defendant immediately ceased all further collection activity. Over the course of the next several days, Defendant told Attorney Zelotes that its collection actions complied with the FDCPA, provided him with relevant case law, and told him that any suit would be frivolous.

On December 8, 2003 Plaintiff filed this action. Count One alleges that Defendant "willfully and/or negligently" violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") "by making false, deceptive and/or misleading statements in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e, and/or by using unfair means in attempting to collect a debt, in violation of 15 U.S.C. § 1692f." Count Two alleges that Defendant violated the Connecticut Unfair Trade Practices Act, Conn. Gen.

---

**1.** The facts are taken from the parties' Local Rule 56 statements, and are undisputed un-

less stated otherwise.

Stat. § 42–110a et seq. ("CUTPA"). Defendant filed a counterclaim requesting a declaratory judgment that (1) seeking voluntary payment on a time-barred debt does not violate the FDCPA (Def. Counterclaim Count One); (2) nothing in Defendant's November 7, 2003 letter or subsequent telephone messages contained a threat of litigation or was a false, misleading, or deceptive statement made or was an unfair means of collecting a debt; (3) it did not violate 15 U.S.C. §§ 1692g, 1692e, or 1692f in pursuing collection efforts during the 30–day dispute period absent receipt of a written dispute from Plaintiff; and (4) its collection efforts did not violate CUTPA. In March 2004 Plaintiff's motion to strike Defendant's counterclaims [Doc. No. 6] was denied [Doc. No. 10].

Now, the parties have filed cross-motions for summary judgment, and Plaintiff has filed a motion for conditional certification.

## II. Summary Judgment Standard

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).

## III. Discussion

### A. Plaintiff's Motion for Summary Judgment

Plaintiff alleges that: (1)(a) Defendant knew or should have known that the debt was subject to a complete limitations defense; (b) Defendant's communications violated sections 1692e(2)(A), 1692e(5), and 1692e(10) because the least sophisticated debtor might reasonably have interpreted Defendant's collection letter and eleven telephone calls as an implicit threat of suit, when suit was not intended and may reasonably have mislead or confused the least sophisticated debtor as related to the time-barred debt's legal status by impressing upon Plaintiff a false sense of urgency; (2) Defendant impermissibly overshadowed the § 1692g(a) notice by conditioning substantial advertised savings upon its receipt of payment on a date preceding the passing of the § 1692g(a) validation period; (3) Defendant cannot avail itself of the affirmative defense set out in section 1692k; and (5) Defendant violated CUTPA to the extent that it had violated the FDCPA.

#### 1. Plaintiff's Claims under 15 U.S.C. §§ 1692e(2)(A), 1692e(5), and 1692e(10)

The FDCPA establishes a general prohibition against the use of "false,

deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "Because the list in the sixteen subsections [of § 1692e] is non-exhaustive, a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). A single violation of § 1692e is sufficient to establish civil liability under the FDCPA. *See* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

The Second Circuit has adopted the objective "least sophisticated consumer" standard for cases under § 1692e. *Clomon,* 988 F.2d at 1318. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* At the same time, "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *Id.* at 1319. The "least sophisticated consumer" standard simultaneously. "(1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

### a. Statute of Limitations

Plaintiff argues that Defendant knew or should have known that the statute of limitations for collecting on the debt had expired and, thus, improperly threatened legal action that it could not legally take in its communications to Plaintiff. Defendant argues that it did not threaten Plaintiff and that it merely attempted to seek Plaintiff's voluntary payment of his outstanding debt.

■■ "The Statute of Limitations creates a defense to an action." *Wells v. Carson,* 140 Conn. 474, 476, 101 A.2d 297 (Conn.1953). "It does not erase the debt." *Id.* Accordingly, a debt collector may seek voluntary payment on a time-barred debt, as long as there is no threat of legal action. *Reese v. Arrow Financial Serv., LLC,* 202 F.R.D. 83, 92–93 (D.Conn.2001). This Court must therefore assess whether a genuine issue of material fact exists regarding Plaintiff's claim that Defendant's communications threatened legal action.

### b. 15 U.S.C. §§ 1692e(5) & (10)

Plaintiff argues generally that "[w]hen an attorney (so held out) attempts to collect a debt, both prima facie and implicit is a threat of suit." (Pl.'s Mem at 6.) He contends that "Defendant's implicit threat of litigation is not ... *limited* to [its] use of attorney letterhead," and argues that the threat is manifest in the "cumulative effect" of Defendant's language both in the telephone messages and the dunning letter. (Pl.'s Mem. at 14–16.) More specifically, Plaintiff contends that the following constituted both threats of action Defendant did not intend to take and false representations: (1) the attorney letterhead, identifying Defendant as "Attorneys and Counselors at Law"; (2) language in the letter, stating that (a) "Our law firm has been retained to collect from you,"(b) "Our client has agreed to," and (c) "If you want to resolve this matter ... call our law firm at ...";  and (3) language in the recorded telephone messages, stating that "This is the law firm of Riddle & Associates calling you about an important legal matter." (Pl.'s Mem. at 15.)

■ 15 U.S.C. § 1692e generally provides that "[a] debt collector may not use any false, deceptive, or misleading repre-

sentation or means in connection with the collection of any debt." Subsection (5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and subsection (10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt...", 15 U.S.C. § 1692e(10). In determining whether a collection letter threatens legal action under § 1692e(5), courts look to whether a debt collection letter indirectly or impliedly states that legal action is underway or contemplated imminently.

In *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir.1989), the United States Court of Appeals for the Second Circuit found an implied threat to take legal action in the following statements: "Notice is Hereby Given That This Item Has Already Been Referred For Collection Action"; "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate to Secure Payment In Full"; and "Pay This Amount If Action Is To Be Stopped." The court explained that, although a close question, "[t]he clear import of the language, taken as a whole, is that [some] type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Id.*

A few years later, in *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 62 (2d Cir.1993), the Second Circuit again found an implied threat of litigation, notwithstanding the fact that the second of two letters sent to the debtor concluded with the statement that "No legal action has been or is now being taken against you." The first letter stated that "our client has instructed us to proceed with whatever legal means is necessary to enforce collection." A second letter provided in part that "Your delinquent account has

been referred to my desk where a decision must be made as to what direction must be taken to enforce collection. Were our client to retain legal counsel in your area, and it was determined that suit should be filed against you, it could result in a judgment." The court concluded that the "least sophisticated consumer" would interpret the language contained in the two letters, on whole, to mean that legal action was authorized, likely and imminent.

■ Defendant correctly cites to *Veillard v. Mednick*, 24 F.Supp.2d 863, 867 (N.D.Ill.1998) for the proposition that the mere inference that legal action could be taken because a letter is on law firm letterhead is not sufficient to create FDCPA liability. Indeed, even the mere fact that a debt collection letter comes from an attorney does not vest the communication with an implied threat of legal action. *Sturdevant v. Jolas*, 942 F.Supp. 426, 430 (D.Wis. 1996). "Courts have required more than the fact that a collection letter is from an attorney to find a § 1692e(5) violation." *Kapeluschnik v. LeSchack & Grodensky*, 96–CV–2399(ERK)(CLP), 1999 U.S. Dist. LEXIS 22883, at *20 (E.D.N.Y. Aug. 26, 1999). Although this is true, "in cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney." *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1137 (N.D.Ill.1998). In this case, the implied threat of litigation is not dependent solely on Defendant's use of law firm letterhead. As a result, in the absence of express language threatening legal action, the source of the letter is a persuasive factor to be considered in conjunction with the statements contained in the collection letters and over the telephone.

Here, Defendant stated to Plaintiff, in eleven recorded telephone messages, that their law firm was calling regarding an

important legal matter. In addition, Defendant's collection letter stated that "our law firm has been retained to collect from you," and that should Plaintiff "want to resolve this matter ... call our law firm." (Pl.'s Mem. at 15.) This Court is persuaded that the accretion of references, both within the letter and accompanying letterhead, and in the telephone messages, would indicate to the "least sophisticated consumer" that "[t]he clear import of the language, taken as a whole, is that [some] type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *See Pipiles*, 886 F.2d at 26.

### 2. Section 1692g: The Overshadowing Claim

■ Plaintiff next argues that Defendant impermissibly overshadowed the § 1692g(a) notice by: (1) demanding action, or threatening adverse action, prior to the close of the disclosed thirty-day validation period; and (2) conditioning substantial advertised savings upon its receipt of payment on a date preceding the passing of the § 1692g(a) validation period. Defendant counters that, absent a written dispute from the debtor, it may properly continue its debt collection efforts.

Defendant's collection letter informed Plaintiff:

If you want to resolve this matter, you must either pay the Total Amount Due listed above (unless it has already been paid) or call our law firm at 1–800–225–5050 and work out arrangements for payment.

Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it-by notifying our firm in writing to that effect-we will, as required by law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, we will furnish you with that information too.

If you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires our firm to suspend our efforts to collect the debt until we mail the requested information to you.

■ Section 1692g(a) of the FDCPA requires that a debt collector who sends a letter seeking payment of a debt provide the alleged debtor with a detailed "validation notice" within five days of its initial communication. "The notice must include the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996). "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of [his] rights, it violates the [FDCPA]." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996). In making this determination, courts apply an objective standard measured by the effect of the challenged notice on the "least sophisticated consumer." *Russell*, 74 F.3d 30. Thus, "[a] debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998).

In support of his position that Defendant's demand for action, or threat of ad-

verse action, prior to the close of the thirty-day validation period impermissibly overshadowed the validation notice required by section 1692g(a), Plaintiff cites to *Morgan v. Credit Adjustment Bd., Inc.,* 999 F.Supp. 803, 806 (E.D.Va.1998). In *Morgan,* the court considered language in a collection letter that was inconsistent with and contradicted the substance of the debtor's rights and the creditor's duties under section 1692g(a). The collection letter in *Morgan* stated that "An important matter demanding your immediate attention has been reported to this office. You should contact this office not later than June 20, 1996 to conclude this matter." *Id.* at 807. The court explained that the collection letter failed to effectively convey the validation notice to Plaintiffs because the "language demanding 'immediate attention' and insisting that the debtor contact the office within seven days from the date of the letter could very likely confuse the least sophisticated debtor, who could reasonably interpret the notice as a demand for immediate payment or immediate action." *Id.* The court concluded that "[a] demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts section 1692g(a) and thus violates the Act." *Id.* (citing *U.S. v. National Financial Services,* 98 F.3d 131, 139 (4th Cir. 1996); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996); *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1226 (9th Cir.1988)).

█ This court's review of *Morgan,* however, reveals that a collection letter's demand for immediate payment does not, standing alone, violate the FDCPA. In fact, the court in *Morgan* concluded that Defendant's statement to Plaintiffs that, "To stop further action, pay your account in full to this office," was both misleading and false because "[g]iven such contradictory and ambiguous language, an unsophisticated debtor could be easily confused about the response time and the consequences of failure to pay the debt, and therefore forego the protections afforded by the statute."

The Second Circuit reasoned similarly in *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 86 (2d Cir.1998), where the defendant, a debt collection agency, sent Plaintiff a letter stating that "This notice will serve to inform you that your overdue balance with North Shore Hospital has been referred to Computer Credit, Inc. The hospital insists on immediate payment or a valid reason for your failure to make payment." *Id.* at 84. Below the body of the letter, Defendant advised Plaintiff, "PLEASE SEE IMPORTANT NOTICE ON BACK." *Id.* The back of the notice set forth the validation information required by section 1692g. *Id.* In deciding that defendant's payment notice violated the FDCPA, the court explained that the least sophisticated consumer would be uncertain as to her rights when reading the language on the front of the letter in conjunction with the validation notice on the back of the letter. The Second Circuit also provided an example of language that it believed would have rendered the collection letter in compliance with section 1692g:

> Although we have requested that you make immediate payment or provide a valid reason for nonpayment, you still have the right to make a written request, within thirty days of your receipt of this notice, for more information about the debt. Your rights are described on the reverse side of this notice.
>
> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of

this notice. If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you. Your rights are described on the reverse side of this notice.

*Id.* In its view, "the inclusion of this or similar language would effectively inform a consumer as to his or her rights under the FDCPA without imposing an undue burden on a debt collector's legitimate efforts to obtain the prompt payment of debts." *Id.* Defendant's demand for payment, therefore, is not, standing alone, sufficient to establish a violation of section 1692g. Thus, the critical question for this Court's consideration is whether a genuine issue of fact exists that the collection letter in this case contained language that overshadowed or contradicted the language informing the debtor of his rights under section 1692g, thereby rendering the "least sophisticated consumer" uncertain as to her rights under the FDCPA.

In *Russell v. Equifax,* 74 F.3d 30 (2d Cir.1996), the United States Court of Appeals was presented with a case factually similar to this case. There, defendant's collection letter to Plaintiff was captioned "IMMEDIATE COLLECTION NOTICE" and stated in relevant part:

> Your account, as indicated below, has been placed with out company for immediate collection. It is out practice to post unpaid collections in the amount of $25 or more to individual credit records. If you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days, we will not post this collection to your file . . . . .
> See important information on reverse side.

The back of the notice provided the information required by § 1692g(a) of the Act:

> Unless you notify us within 30 days after receiving this notice that you dis-

pute the validity of the debt, or any portion thereof, we shall assume this debt is valid. If you notify us in writing within 30 days after receiving this notice: (1) that this debt or any portion thereof, is disputed, or (2) that you request the name and address of the original creditor, we will obtain verification of this debt, a copy of any judgment (if a judgment is involved), or the name and address of the original creditor if different from the current creditor, and mail a copy and/or provide the name of the creditor to you.

Equifax sent a second notice dated March 17, 1992 to Russell. It was captioned "CONTACT THIS OFFICE AT ONCE" and stated:

> Further delay on your part could be costly. At this point only your action will determine future handling. We urge your cooperation for your own sake. Payment in full within 5 days is not demanded. What will your answer be?.

The Second Circuit concluded that the collection letters presented Plaintiff with different and contradictory statements, which the FDCPA was designed to prevent. The court explained that the least sophisticated consumer could reasonably have believed, notwithstanding the appropriate validation notice, that if she did not pay Defendant within ten days, her credit score would be adversely and permanently affected. Consequently, the collection letters' validation notice was "contradicted and overshadowed by the warning on the front that the collection would be posted to Russell's file unless she chose not to dispute it and paid it within the next 10 days." *Id.* at 34.

In this case, as in *Russell.* Defendant provided the Plaintiff with the validation notice required under section 1692g. In

addition, however, Defendant's collection letter presented Plaintiff with the opportunity to satisfy its outstanding debt at a fifty-percent discount of $4,057.96 if he submitted a prompt payment-within thirty days *of the date of the letter.* Plaintiff, however, under section 1692g, was entitled to *thirty days from the receipt* of the collection letter to dispute the validity of the debt or any part of it. Here, as in *Russell,* the least sophisticated consumer could reasonably have believed, notwithstanding the appropriate validation notice, that if he did not pay Defendant within thirty days from the receipt of the letter, he will have foregone his opportunity to satisfy the purported debt at a fifty-percent discount. Because the deadline for submitting the discounted payment-within thirty days of the date of Defendant's letter—would have expired before the thirty days provided for disputing the validity of the debt, Defendant's collection letter "contradicted and overshadowed" the validation notice by presenting Plaintiff with mutually exclusive opportunities—either save $4,057.96 by submitting payment in the same amount within thirty days from the receipt of this letter or exercise your statutory right to contest the validity of the debt and pass upon this fleeting opportunity. Accordingly, this Court finds that Defendant's notice violated section 1692g as a matter of law and grants summary judgment in Plaintiff's favor on this issue.

### 3. Bona–Fide Error Defense Under Section 1692k(c)

Defendant asserts an affirmative defense that, even assuming that the Court grants Plaintiff's motion for summary judgment for violations of the FDCPA, its conduct was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Defendant's sole argument, however, is that

Plaintiff's failure to provide pinpoint citations to pages of the 30(b)(6) deposition demands that this Court deny Plaintiff's motion to strike Defendant's claim. Plaintiff counters that the FDCPA is a strict liability statute and that Defendant has not alleged that its communications to Plaintiff were unintentional. Plaintiff argues that Defendant's affirmative defense must fail because it is not alleging that it committed an unintentional act, but rather, that only it did not subjectively intend to violate the FDCPA.

"A debt collector may not be held liable in any action brought under this title [15 U.S.C. §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. 1692k(c). The Second Circuit has consistently interpreted section 1692k as a strict liability statute. *See, e.g., Russell v. Equifax,* 74 F.3d at 33 ("Once it is shown that defendant ... failed to fulfill the requirements of the Act, strict liability is imposed"); *Bentley v. Great Lakes Collection Bureau,* 6 F.3d at 63 ("FDCPA is a strict liability statute ... and the degree of a defendant's culpability.) As a result, a 'plaintiff need not show intentional conduct under the Act to be entitled to damages.'" *Russell v. Equifax,* 74 F.3d at 33.

The Court has already concluded that Plaintiff has established as a matter of law that Defendant violated section 15 U.S.C. §§ 1692e(2)(A), 1692e(5), and 1692c(10). In addition, Defendant does not contest in its memorandum that it did not intentionally send Plaintiff the collection letter or place its telephone calls. In fact, Plaintiff points to deposition testimony in which Defendant explicitly states that it inten-

tionally communicated with Plaintiff. Accordingly, Defendant cannot avail itself of the bona fide defense under section 1692k(c).

## IV. Plaintiff's Motion for Conditional Certification

■ Subsequent to filing his motion for summary judgment, Plaintiff filed a motion for conditional certification, in which he requests that, in the event that this Court grants summary judgment on the issue of Defendant's liability for violating the FDCPA, this Court exercise its discretion, pursuant to Practice Book § 82–1, and certify the following questions to the Connecticut Supreme Court: (1) Are "statutory damages" (compensating a presumed statutory "loss") awarded pursuant to a consumer protection statute an "ascertainable loss" for purposes of conferring CUTPA standing?; and (2) If not, are "statutory damages" awarded pursuant to a consumer protection statute an "implied exception" to the CUTPA "ascertainable loss" requirement? (Pl.'s Mot. Conditional Cert. at 1–2.) Defendant counters that several federal district court opinions have consistently concluded that a debtor who has merely received a debt collection letter does not satisfy the "ascertainable loss" requirement pursuant to CUTPA. (Def.'s Opp. Pl.'s Mot. Conditional Cert. at 1.) Plaintiff argues, however, the decisions on which Defendant relies did not consider the construction of "ascertainable loss" that he presents in this case and thus, those decisions are not determinative. In addition, Plaintiff notes the lack of controlling precedent from the Connecticut Supreme Court on this issue.

Section 82–1 of the Connecticut Practice Book provides that "[t]he supreme court may answer questions of law certified to it by ... a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state." Because, as discussed below, this Court believes that existing decisions from the Connecticut Supreme Court and United States District Court adequately address the issues presented, there is no need to certify a question of law to the Connecticut Supreme Court.

Section 42–110b(a) of the Connecticut General Statutes prohibits persons from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To bring an action under CUTPA, however, a plaintiff must establish that he has "suffer[ed] any ascertainable loss of money or property ... as a result of the use or employment of a method, act or practice prohibited by section 42–110b." Conn. Gen.Stat. § 42–110g(a). "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 614, 440 A.2d 810 (1981).

■ The issue presented in this case is whether Plaintiff's allegation that he was deprived of the benefit of his bargain and lost substantial "rights or benefits" under his consumer credit contract is sufficient for establishing an "ascertainable loss" for purposes of CUTPA. Plaintiff argues that implicit in every consumer credit contract is the agreement that should the consumer default on his payment obligations, the creditor and it agents or assigns shall collect the debt in accord with applicable

state and federal law. Defendant counters by arguing that in several cases, the United States District Court for the District of Connecticut District Court has determined that a consumer who had received a debt collection letter had failed to establish an ascertainable loss for purposes of CUTPA.

In *Tragianese v. Blackmon*, 993 F.Supp. 96, 97 (D.Conn.1997), a debt collector mailed a letter to the debtor on behalf of a retail merchant, attempting to collect $ 6.35 on behalf of the retail merchant, and demanded a $ 20 collection charge. The letter also requested that the debtor contact the debt collector to prevent the matter from being referred to the police. *Id.* at 97. In denying Plaintiff's motion for summary judgment, the court explained that plaintiff had not asserted any facts that would have permitted the court to conclude that she had sustained the essential clement of ascertainable loss required for her to prevail on her CUTPA claim. *See also Maguire v. Citicorp Retail Servs.*, 147 F.3d 232 (2d Cir.1998) (affirming district court's grant of defendant's motion for summary judgment in light of plaintiff's failure to establish "ascertainable loss" where her complaint did not allege any injury or loss that resulted from receipt of the debt collection letter); *Young v. Citicorp Retail Services*, 1997 WL 280508, 1997 U.S. Dist. LEXIS 22669 (D.Conn. May 20, 1997) (concluding that there was nothing in the record to suggests that plaintiff had suffered a "deprivation, detriment and injury" as a result of her receipt of a debt collection letter in violation of the FDCPA); *Krutchkoff v. Fleet Bank, N.A.*, 960 F.Supp. 541, 550 (D.Conn.1996) (explaining that plaintiff could not recover damages under CUTPA for "ascertainable loss, including emotional distress, anxiety, outrage, financial inconvenience, loss of credit or damage to his credit reputation," because he had failed to establish that the bank violated his rights or caused the "ascertainable loss" from which he claimed he had suffered.). These cases are not instructive in the present case, however, because the plaintiffs in those cases did not make the argument that plaintiff makes here-that he was deprived of the benefit of his bargain.

In *Hinchliffe v. American Motors Corp*, plaintiff purchased a "full-time four-wheel drive" vehicle, but, in fact, it was actually a system for transmitting power to the wheels using a limited slip differential mechanism. 184 Conn. at 610–11, 440 A.2d 810. The Connecticut Supreme Court held that although plaintiff was unable to establish a particular dollar amount, there was no need to allege or prove the amount of the ascertainable loss. *Id.* at 614, 440 A.2d 810. The court explained that "a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained." *Id.* at 614–15, 440 A.2d 810.

Similarly, in *Goins v. JBC & Assocs., P.C.*, 352 F.Supp.2d 262 (D.Conn.2005), plaintiff received a collection letter from JBC, a consumer collection agency representing Wilson Suede & Leather ("Wilson"), relating to two returned checks written by plaintiff to Wilson. *Id.* at 264. Plaintiff commenced two separate FDCPA actions in response to these collection letters but, notwithstanding the fact that defendant's were aware that plaintiff had filed for bankruptcy, JBC sent plaintiff another letter demanding payment of the debt allegedly owed to Wilson. In concluding that plaintiff had failed to provide a basis for finding that she was ascertainably injured as a result of the letter, and thus denying plaintiff's motion for summary judgment, the court speculated "that a letter of the kind sent to plaintiff could cause injury in a variety of ways." *Id.* at

276. The court opined that a "consumer may respond to the letter by actually paying an amount far greater than what is actually owed, or may incur other expenses in challenging the debt collection effort. The debt collection practice may unfairly damage the consumer's credit rating, or may cause the consumer emotional distress." *Id.* at 276. Particularly relevant to this case, however, was the court's observation that although plaintiff stated that she sustained "ascertainable loss when she got a letter that violated state and federal laws," she failed to proffer any evidence or explanation of how her receipt of the letter caused such a measurable loss. *Id.* at 275 n. 6.

The court is persuaded in this case that Plaintiff has established an "ascertainable loss" for purposes of CUTPA because he has alleged that, as a result of Defendant's conduct, which violated the FDCPA, he was deprived of the benefit of his bargain with MBNA that any attempt by MBNA or its successor in interest to collect upon his consumer credit account shall, should he be in default, be in accord with applicable federal and state law. (Pl.'s Compl. ¶ 9; Pl.'s Mem. at 34.) Plaintiff "received something other than what he [had] bargained for." *See Hinchliffe*, 184 Conn. at 614, 440 A.2d 810. Plaintiff has not, and is not required to, allege or prove the amount of ascertainable loss, because CUTPA "expressly contemplates plaintiffs' judgments which do not include an award of money damages." *Id.* at 614, 440 A.2d 810.

Because this Court has granted Plaintiff's motion on the grounds that he incurred an "ascertainable loss" as a resulting of having been denied the benefit of his bargain, a discussion of Plaintiff's alternative claim whether "statutory damages" awarded pursuant to a consumer protection statute may be considered an "ascertainable loss" for purposes of CUTPA, or as an "implied exception" thereto-is moot. Plaintiff's motion for conditional certification is denied.

## V. Defendant's Motion for Summary Judgment and Declaratory Judgment

Defendant argued in support of its motion for summary judgment that: (1) debt collectors may collect on a time-barred debt as long as no threat of litigation is made; (2) it properly identified itself as a law firm to Plaintiff; and (3) the thirty-day validation period is not a grace period. In addition, Defendant seeks a declaratory judgment that: (a) seeking voluntary payment on a debt that may be time barred does not violate the FDCPA; (b) nothing in its collection letter to Plaintiff or subsequent telephone messages contained a threat of litigation; (c) it did not violate the FDCPA by pursuing collection efforts during the 30–day validation period absent receipt of a written dispute from Plaintiff; and (d) its collection efforts against Gervais did not violate CUTPA. Because the court has addressed these issues in the course of addressing Plaintiff's motion for summary judgment, and because we have granted Plaintiff's motion for summary judgment on both Counts of his Complaint, Defendant's motion for summary judgment and declaratory judgment are denied.

## VI. Conclusion

Plaintiff's motion for summary judgment is granted with respect to Counts One and Two of his Complaint. Defendant's motion for summary judgment and requests for declaratory judgment are denied. Plaintiff's motion for conditional certification is denied.

SO ORDERED.